IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAUREN ERIKSEN, an individual,

        Plaintiff,

        v.

SAELM-KEIZER SCHOOL DISTRICT, an
Oregon public school district; CARLOS
RUIZ, an individual; JOSH THORP, an
individual, and WENDY STRADLEY, an
individual,

        Defendants.

_____

No. 6:24-cv-1811-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Lauren Eriksen brings this action against her former employer and several former co-workers following injuries Plaintiff alleges she received at work. Plaintiff brings claims of due process, battery, and retaliation for reporting safety violations. Defendants move to dismiss only the battery claim, arguing that claim must be resolved in Oregon's workers' compensation system. Defs.' Mot. Dismiss; ECF No. 4. Viewing the evidence in the light most favorable to Plaintiff, as it must at this stage, the Court disagrees.

## BACKGROUND

In September 2023, Plaintiff began working as an Instructional Assistant at West Salem High School. Not. Removal, Ex. 1 (the Complaint), ¶ 8; ECF No. 1. Originally hired to work in

1 – OPINION AND ORDER

the Emotional Growth Classroom, Plaintiff soon worked full-time with special education students in the Developmental Learning Center (DLC). Compl. ¶ 9.

Over the past decade, Defendant Salem-Keizer School District (SKSD) "has experienced a significant increase in student-on-staff violence." Compl. ¶ 11. In March 2023—six months before Plaintiff began working for the District—four employees filed a Tort Claim Notice against SKSD. Compl. ¶ 12. The notice alleged SKSD:

> (1) failed to take adequate preventative, precautionary, or mitigating actions to protect its employees against known risks, and (2) has acted with deliberate indifference to known damages in ways that have affirmatively made the student violence problem at the District worse and/or created new opportunities for danger.

Compl. ¶ 12.

In Fall 2023, Oregon's Occupational Safety and Health Division (OSHA) "found that SKSD employees working with students in special education that had complex behaviors were exposed to risk of being injured by students." Compl. ¶ 14. OSHA also "found SKSD to be out of compliance with several Safety Committee requirements as well as requirements relating to injury investigation, employee training, and personal protective equipment." Compl. ¶ 15. Despite OSHA's findings and the March 2023 Tort Claim notice, SKSD made no changes. Compl. ¶ 16. "The DLC did not have an adequate number of [Instructional Assistants] for the 2023-2024 school year when injuries and absences were considered." Compl. ¶ 17. These shortages resulted in multiple incidents involving students attacking Plaintiff.

> During the 2023-2024 school year, Ms. Eriksen was the target of multiple violent assaults by students in the DLC. Students bit, hit, and punched Ms. Eriksen. She had urine-soaked clothes thrown at her. Students pulled her hair and spit in her face. Students swore at her and pushed and threw objects at her, such as pencils, iPads, chairs, and desks. One student cleared off a table with glass on it and shattered glass all over the floor.

Compl. ¶ 18.

2 – OPINION AND ORDER

In November 2023, a student bit Plaintiff's arm, tearing away a piece of Plaintiff's skin and causing nerve damage. Compl. ¶ 19. One month later, another student punched Plaintiff in the face, leaving Plaintiff with a concussion. Compl. ¶ 20. In January 2024, Plaintiff suffered another concussion when a third student slammed Plaintiff into a bathroom door and punched her in the head. Compl. ¶ 21. "Other educators were attacked and physically harmed in the DLC." Compl. ¶ 22. In March 2024, Plaintiff and several co-workers met with an Assistant Principal "to address their safety concerns because nothing was being done about this pattern of assaults." Compl. ¶ 23. Defendants, however, did not implement any of the suggestions, did not make any changes, and "the assaults continued." Compl. ¶ 25.

In April 2024, Plaintiff and her colleagues observed that the student who shoved Plaintiff into a bathroom door and punched Plaintiff in the head three months earlier "was highly [agitated] and engaging in violent and destructive behavior." Compl. ¶ 26. For five days in a row, the student "acted out in a violent way, hurting himself and staff." Compl. ¶ 27. On April 5, the student shoved Plaintiff into a wall. Compl. ¶ 28. On April 8, the student[1] "had his most violent outburst to date," "running around the classroom, screaming[,] and throwing objects." Compl. ¶ 29.

> Ms. Eriksen complied with West's protocols and remained in the room with other educators, standing behind soft "Ukeru" pads for protection. Student C saw Ms. Eriksen and charged at her. Student C hit Ms. Eriksen and the DLC teacher. Student C slammed Ms. Eriksen into the door, which opened until the DLC teacher caught Ms. Ericksen, pulled her back inside, and kept her from falling down onto the sidewalk.

> Ms. Eriksen was terrified. She could tell that Student C was in his most violent episode to date, and she worried that he was going to hurt her, other adults or students, and himself.

> Ms. Eriksen is a certified EMT with EMS experience. She knows when 911 support is needed, and she knows how to communicate this need. Therefore, Ms.

---

[1] The Complaint refers to this student as "Student C."

Eriksen agreed with the DLC teacher that Ms. Eriksen should call for help. Ms. Eriksen used her radio and called for police and medical support.

Over the radio, which was broadcast to all West administrators and the school office specialists, Ms. Eriksen reported that she needed someone to call 911. The radio also broadcast the sounds of Student C destroying property and yelling.

\* \* \* \*

Mr. Thorp responded to the call and asked for more details. Ms. Eriksen repeated her request for 911.

Then, Ms. Eriksen heard the voice of Ms. Stradley over the radio. Ms. Stradley is West's Assistant Principal in charge of the Athletics Department. Ms. Stradley said over the radio, "This is Wendy. Cancel the 911." As a result, nobody called 911; nobody requested police or medical support.

\* \* \* \*

Meanwhile, Ms. Eriksen and her colleagues were still trapped inside the classroom with Student C, complying with protocols that do not allow them to leave students alone in a room. After Ms. Stradley cancelled the 911 call, Student C was swinging cabinet doors open and shut. When he moved to bash his head into the cabinet, the DLC teacher made a noise to distract him so he would not hurt himself. At this point, he directed his attention to Ms. Eriksen, the DLC teacher, and a Campus Safety member.

Student C crouched down low, like a football player, and ran full speed at Ms. Eriksen, the DLC teacher, and the Campus Safety member. He hit them in a crouched position and then lifted up, sending them flying into the air. The DLC teacher's head slammed into the wall. Ms. Eriksen went crashing into a stationary bike and walker. The Campus Safety member was knocked over as well.

Both Ms. Eriksen and the DLC teacher were so badly injured that they needed immediate medical care. Mr. Thorp drove them to urgent care and dropped them off. Ms. Eriksen was diagnosed with a head injury and concussion, nausea, neck muscle strain, neck and back muscle spasms, and lumbar muscle strain.

\* \* \* \*

Due to SKSD's failure to protect Ms. Eriksen from future harm, failure to investigate all of Ms. Eriksen's allegations, and failure to discipline Mr. Thorp or Ms. Stradley, Ms. Eriksen felt that she had no choice but to resign from the DLC position on August 27, 2024.

Compl. ¶¶ 30–33, 35–36, 38–40, 52.

As noted, Defendants move to dismiss Plaintiff's battery claim. Defendants do not move to dismiss Plaintiff's due process and retaliation claims.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Generally, in Oregon, "the exclusive remedy of injured employees against their employers for injuries suffered in the course and scope of employment is to receive workers' compensation benefits." *Nicholsom v. Blachly*, 305 Or. 578, 581 (1988) (cleaned up). One relevant exception to that general remedy is ORS 656.156(2). That statute provides: "If injury or death results to a worker *from the deliberate intention of the employer . . . to produce such injury or death*, the worker may . . . have cause for action against the employer, as if such [worker's

compensation] statutes had not been passed." *Id*. (emphasis added). An injury falls under ORS 656.156(2)'s exception "if, but only if, the employee's injury or death 'results . . . from the deliberate intention of the employer . . . to produce such injury or death.'" *Kilminster v. Day Management Corp.*, 323 Or. 618, 629 (1996) (quoting ORS 656.156(2)). The Oregon Supreme Court has consistently interpreted the phrase "deliberate intention to produce the injury" to mean "that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross." *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 453–54 (1916). An "employer's continued failure to rectify conditions which twice previously injured plaintiff," however, does not rise to "the deliberate intention . . . to produce such injury" under ORS 656.156(2). *Caline v. Maede*, 239 Or. 239, 240 (1964) (*en banc*).

Defendants point generally to longstanding Oregon caselaw confirming that an employer's gross negligence does not rise to the "deliberate intention required" under ORS 656.156. Over one hundred years ago, Manoah A. Jenkins was injured while working at a sawmill. In analyzing whether the allegations there rose to that of "deliberate intention," the Court summarized the allegations and then concluded plaintiff did not meet the narrow exception:

> That defendant knew the roll was broken and a menace and danger to workmen, and knowing this fact carelessly, recklessly, and negligently failed to repair it, and required its workmen to labor in its vicinity in its defective condition, deliberately intending to risk the danger of an injury. The deliberate intent follows as a deduction from the allegation of knowledge of the danger and the carelessness, negligence, and recklessness of defendant in not obviating it. In our opinion the allegation goes no further than to charge that defendant with full knowledge of the defect carelessly, negligently, and recklessly took the risk of its injuring the plaintiff. *If defendant deliberately intended to wound plaintiff or his fellow workmen and intentionally used this broken roll as he would have used an axe or a club to produce the injury, it is liable; otherwise it is not*. A deliberate act is one the consequences of which are weighed in the mind beforehand. It is prolonged

premeditation, and the word when used in connection with an injury to another denotes design and malignity of heart. . . . We think by the words "deliberate intention to produce the injury" that the lawmakers meant to imply that *the employer must have determined to injure an employe and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross*.

*Jenkins*, 79 Or. at 452–53 (emphasis added). As his claim did not meet the exception, Jenkins was forced to bring his claims under the worker's compensation system.

Then, nearly one hundred years ago, the Supreme Court of Oregon again analyzed whether a complaint's allegations sufficiently pleaded the employer's deliberate intent to injure plaintiff. *Heikkila v. Ewen Transfer Co.*, 135 Or. 631 (1931). There, plaintiff was injured when his employer forced him to use a company truck as a brake of sorts in front of a second company truck that the employer knew had insufficient brakes. The plaintiff alleged his employer knew the brakes were insufficient to control the second truck but refused to repair the brakes when requested by employees. Plaintiff alleged that the employer "maliciously, willfully, and in violation of the statutes of the State of Oregon . . . commanded [the second driver] to follow and to drive and operate the said truck in said condition directly in the rear of the said truck being driven by the plaintiff herein *for the deliberate intention and purpose of producing the said injury to this plaintiff*." *Id.* at 632–33 (emphasis added). The Court characterized plaintiff's claim as "the willful and intentional misconduct of the defendant in recklessly and carelessly using the truck mentioned without sufficient brakes to control the same." *Id.* at 633. In concluding the exception did not apply, the Court noted:

> A fair construction of the complaint is that there was a reckless disregard of the consequences in so using the truck driven by plaintiff as a brake to the other truck which had insufficient brakes. *The meaning expressed in the complaint is not that the truck was so operated with intent to injure the plaintiff*. . . . It is further claimed that, on account of the violation of the law in using the truck without brakes such an act would constitute intentional and willful misconduct, which it is claimed would be, in effect, an intent to produce the injury complained of. . . . *It does not appear that the Ewen Transfer Company determined to injure the*

*plaintiff or used any means appropriate to that end . . . .* All of the facts delineated in the complaint, taken together, do not indicate that the injury of which plaintiff complains was caused by the deliberate intention of his employer, the Ewen Transfer Company, to produce such injury. Their intention was, as alleged, to use the truck in its defective condition without brakes. While this is a violation of the law, it does not signify that defendant infringed the law for the purpose of intentionally injuring the plaintiff. . . . Under our authorities, . . . "deliberate intention" implies that the employer must have determined to injure the employee. It is not sufficient to show that there was mere carelessness, recklessness, or negligence, however gross it may be. *Reckless disregard of the consequences*, for the purpose of using the truck driven by plaintiff as a brake for the other truck, *does not charge an intent to injure plaintiff*.

*Id.* at 633–35 (emphasis added).

In 1964, the Supreme Court of Oregon, sitting *en banc*, had the opportunity to apply

*Jenkins* and *Heikkila*. The opinion–whose clarity is matched only by its brevity—provides:

Plaintiff brought this action for damages for personal injuries against his employer. *The only question is whether the employer's continued failure to rectify conditions which twice previously injured plaintiff constitutes 'the deliberate intention . . . to produce such injury.'* ORS 656.156(2). If it does, plaintiff can maintain this action; if not, plaintiff's only remedy is Workmen's Compensation benefits.

Upon the authority of *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 155 P. 703 (1916), and *Heikkila v. Ewen Transfer Co.*, 135 Or. 631, 297 P. 373 (1931), the trial court's ruling that this does not constitute 'deliberate intention' is affirmed.

*Caline*, 239 Or. at 240 (emphasis added).

If the caselaw ended with *Caline*, Plaintiff's battery claim would quite clearly be limited to the worker's compensation system. Plaintiff, however, points to *Kliminster*, a more recent opinion, arguing her allegations here are analogous to the allegations there. Kliminster fell 400 feet to his death when working on a radio tower. The personal representatives of Kliminster's estate alleged Kliminster "frequently had complained to [his employer] DMC about the inadequate equipment that he was forced to use when climbing." 323 Or. At 621. He "asked that he not be required to climb anymore" but DMC told him "to climb or leave his employment." *Id*. Those plaintiffs alleged:

8 – OPINION AND ORDER

DMC deliberately did not provide its workers, including decedent, with legally required safety equipment. DMC deliberately did not instruct decedent and its other workers how to use legally required safety equipment, how to engage in safe work practices, or how to follow state fall-protection regulations. DMC encouraged its workers not to use available safety equipment and not to take legally mandated safety precautions. DMC refused to develop a system or plan to ensure the safety of its workers at the tower or to provide adequate supervision to ensure the safety of those workers. As a result of DMC's actions, those workers were not adequately protected from fall, injury, and death.

DMC knew, before decedent's death, that if it did not provide the workers in decedent's work location with the requisite safety equipment and training, a worker would fall from the tower and that such a fall would result in serious injury or death.

*Kliminster*, 323 Or. at 621–22.

After summarizing *Jenkins* and *Heikkila*, and noting that the Oregon Supreme Court "has consistently adhered to a strict construction of this statutory exception," the Court noted:

The meaning of the provision at issue in this case is clear from this court's prior interpretations. In order for a worker to show that an injury that occurred during the course and scope of the worker's employment "result[ed] . . . from the deliberate intention of the employer . . . to produce" that injury, the worker must show that the employer determined to injure an employee; that the employer acted on that intent; and that the worker was, in fact, injured as a result of the employer's actions.

*Id.* at 631 (alterations in original).

The Court then summarized *Weis v. Allen*, 147 Or. 670 (1934), the only case the Supreme Court of Oregon had previously held that a plaintiff met the exception in ORS 656.156(2). In *Weis*, the plaintiff was injured by a spring gun his employer set on company property. The *Kilminster* Court provided a block quote of *Weis*:

The record discloses that the guns were so arranged that their contents would be discharged into the person for any one who might come in contact with the wires operating them. This change was made at the insistence and with the knowledge of the defendant, and the guns, set to inflict serious injury, were so maintained by him even after he had been ordered by the police to discontinue their use as dangerous and unlawful. There can be, therefore, no question but that these guns were kept and used by the defendant with the deliberate intention of injuring any one who might inadvertently cause them to be discharged.

9 – OPINION AND ORDER

> It was not necessary here to prove that the defendant had singled the plaintiff out and set the gun with the express purpose of injuring him and no one else. The act which the defendant did was unlawful and was deliberately committed by him with the intention of inflicting injury.

*Kilminister*, 323 Or. at 632 (quoting *Weis*, 147 Or. at 680–82) (cleaned up).

Turning to the specific factual allegations pleaded by Kilminster's personal representatives, the Court concluded:

> In this case, plaintiff has alleged facts sufficient to meet the foregoing standard for deliberate intention to injure or kill. Plaintiff alleges that DMC *knew* that decedent or someone who did the same work as decedent *would* be injured from a fall from the tower; that DMC decided to forego taking safety procedures, *knowing* that, by doing so, serious injury or death *would* result; and that DMC told decedent to climb the tower or lose his job. . . . The underlying facts pleaded by plaintiff do not describe when or how DMC determined to injure decedent. However, a specific intent to produce an injury may be inferred from the circumstances. Taking all the allegations of the second claim together, plaintiff alleges more than gross negligence, carelessness, recklessness, or conscious indifference to a substantial risk of injury. Plaintiff alleges that serious injury to or death of a worker was *certain to occur*, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt. A reasonable finder of fact could infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference. We need not consider whether plaintiff can *prove* that defendants had the alleged specific intent to injure or kill decedent; in the procedural posture of this case, we consider only the sufficiency of the complaint.

*Id.* at 632–33 (emphasis in original) (internal citation omitted).

At first blush, it can be difficult to reconcile *Jenkins*, *Heikkila*, and *Caline* with *Kilminister*.[2] Given that, the Court understands how each party here argues those cases support their own position. There is certainly language in *Kilminster* indicating, at first glance at least, that an employer who knowingly subjects a worker to certain injury will find itself liable under ORS 656.156(2). Citing *Kilminster*, Plaintiff argues:

---

[2] *Weis*, where the employer intentionally set spring guns with the specific intent that the guns would injure anyone—including an unlucky employee—who triggered them, presents an obvious outcome that is easily distinguishable from the facts alleged here.

> A plaintiff adequately pleads that an employer determined to injure an employee when the employer knew that an employee would be injured, decided to forego taking safety procedures, and required the employee to perform job duties despite the knowledge that she or someone who did the same work would be injured.

Pl.'s Resp. 6; ECF No. 6.

Later, citing two cased decided by the Oregon Court of Appeals, Plaintiff again argues that an employer's knowledge of near-certain injury resulting from a known dangerous workplace is enough to fall under ORS 656.156(2):

> In *Goings*, the Court made clear that, in order to fall under the O.R.S. § 656.156(2) exemption, pleadings should allege that the employer had a continuing policy or practice of requiring workers [to work] in an unsafe environment and that the employer knew such policy or practice would result in injury." *Goings v. Co.*, 280 Or. App. 395, 401 (2016). Plaintiff meets this standard when she alleges that SKSD knew the work environment was unsafe, knew staffing was inadequate, knew it was operating in contravention of OSHA standards, knew the assaults had occurred and would occur because of these conditions, and required Plaintiff to work in these conditions anyway. Similarly, in *Bundy*, the Court of Appeals upheld the dismissal of Plaintiff's claim but explained that it would have survived the motion to dismiss if the plaintiff had alleged facts sufficient to infer that the employer knew a certain piece of equipment would malfunction, that an employee would be required to monitor the malfunctioning unit without safety equipment, and that the employee would be injured as a result. *Bundy v. Nustar GP, LLC*, 277 Or. App. 785, 797 (2016), *rev'd* [*on other grounds*], 362 Or. 282 (2017).

Pl.'s Resp. 9.

In the Court's view, however, Plaintiff's argument veers perilously close to an argument that an employer will find itself liable under ORS 656.156(2) merely by increasing the risk to an employee or by subjecting its employee to a known, virtually certain risk of harm. This argument, however, was considered and then roundly rejected in *Jenkins*. That employer knew the broken roll was "a menace and danger to workmen" yet required employees to work for an entire year "in its vicinity in its defective condition, *deliberately intending to risk the danger of an injury*." *Jenkins*, 79 Or. at 452–53 (emphasis added). Despite that knowledge of a clear risk of almost certain injury, the Oregon Supreme Court concluded: "If defendant deliberately intended

11 – OPINION AND ORDER

to wound plaintiff or his fellow workmen and intentionally used this broken roll as he would have used an axe or a club to produce the injury, it is liable; otherwise it is not." *Id.* at 453. Because the employer did not specifically intend to injure the employee and did not "use[] some means appropriate to that end"—such as physically striking the employee with the broken roll— the employer did not have a "deliberate intention to produce the injury" and the exemption did not apply. *Id.* at 453—54.

Additionally, although *Kilminster* contains language indicating an employer's knowledge that its employee is subject to a certain risk of injury may expose the employer to liability under ORS 656.156(2), such a reading ignores that the *Kilminster* Court first looked at the certainty of injury and then concluded a reasonable jury could infer from those allegations the employer "wished to injure or kill decedent." *Kilminster*, 323 Or. at 633. This Court reads *Kilminster* as confirming that an employee must eventually prove the employer had "[a] specific intent to injure or kill" its employee. *Id.* Absent that specific intent to injure, merely increasing the risk to an employee, no matter how certain that risk may be, will not fall under ORS 656.156(2).

Plaintiff's citations to *Bundy* and *Goings* merely confirm this Court's analysis is correct. The *Bundy* court "emphasized that ORS 656.156(2) requires a showing that the employer deliberately intended to produce the injury—deliberately intending to subject an employee to the *risk* of injury is not enough." 277 Or. App. at 796 (emphasis in original). And in describing *Kilminster's* holding, the *Goings* court emphasized:

> The court held that the plaintiff's complaint met that test because it included allegations from which a factfinder could infer "a specific intent to produce an injury:" the plaintiff alleged "that serious injury to or death of a worker was *certain to occur*, that [the employer] failed to take requisite safety precautions or buy requisite safety equipment, and that [the employer] instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt." That permissible inference of the employer's actual intention to injure—going beyond "gross negligence, carelessness, recklessness, or conscious

indifference to a substantial risk of injury—allowed the plaintiff to pursue a tort claim under ORS 656.156(2).

280 Or. App. at 401 (emphasis and alterations in original) (internal citations omitted).

Defendants, on the other hand, recognize that Plaintiff must adequately plead Defendant's specific intent to injure her, but argue that "the allegation that Defendant school district deliberately intended to injure Plaintiff is mere speculation, as that conclusion cannot be logically deduced from the facts alleged in Plaintiff's Complaint." Defs' Reply 4; ECF No. 7. While this is a close question, Plaintiff pleads just enough at this stage to allow a permissible inference that Defendant intended to injure her.

In addition to the five specific assaults, each occurring on a different day, Plaintiff alleges that students: threw urine-soaked clothes at her; pulled her hair; spit in her face; swore at her; and threw a variety of objects at her. Compl. ¶ 18. These allegations, however, merely establish "the employer's continued failure to rectify conditions which . . . previously injured plaintiff." *Caline*, 239 Or. at 240. Under *Caline*, however, that is not "deliberate intention." *Id.*

But Plaintiff alleges a bit more. For example, an Assistant Principal met with Plaintiff and other teachers to "address their safety concerns because nothing was being done about this pattern of assaults." Compl. ¶ 23. Although Defendant Thorp agreed to implement several "solutions" agreed upon at that meeting, nothing changed. Compl. ¶ 24–25. Additionally, on the day of the most violent assault, Plaintiff used the radio to request someone call 911. "The radio also broadcast the sounds of Student C destroying property and yelling." Compl. ¶ 33. An Assistant Principal said to cancel the call to 911. Compl. ¶ 36. After the Assistant Principal "cancelled the 911 call," Student C assaulted Plaintiff and two other school employees. Compl. ¶¶ 38–40. Taken together, these specific factual allegations would allow a jury to infer that Defendants "acted as [they] did because [they] wished to injure . . . [Plaintiff]. A specific intent

13 – OPINION AND ORDER

to injure . . . [Plaintiff] certainly is not the only state of mind that could be inferred, but it is a permissible inference." *Kilminster*, 323 Or. at 633. It may well turn out that Defendants acted as they did not with the intent to injure Plaintiff, but rather to comply with budget or staffing realities.[3] It could be that the Assistant Principal cancelled the 911 call not because she wanted to injure Plaintiff, but because she believed the situation was safe. Or perhaps she simply wanted to avoid a newspaper article alerting the community that police had to be called to the school to deal with violent students. The Court can think of many reasons, other than a specific intention to harm Plaintiff, to explain Defendants' actions. But at this stage, based on these specific factual allegations, Plaintiff pleads just enough to allow her battery claim to proceed.

## CONCLUSION

Defendants' Motion to Dismiss, ECF No. 4, is DENIED.

IT IS SO ORDERED.

DATED this 4th day of April, 2025.

_____/s/ Michael McShane_____
**Michael J. McShane**
**United States District Judge**

---

[3] After *Kilminster*, the Oregon Court of Appeals concluded that "where an employer fails to undertake safety measures solely because of cost, that failure, even when the employer knows injury is certain to occur, is not actionable under ORS 656.156(2). 'Such a reason, while perhaps not laudable, is not a specific intent to produce an injury.'" *Davis v. U.S. Emps. Couns.*, 147 Or. App. 164, 174 (1997) (quoting *Lusk v. Monaco Motor Homes, Inc.*, 97 Or. App. 182, 189 (1989)).